UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETHAN FAULKNER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LUCILE PACKARD SALTER CHILDREN'S HOSPITAL,<br><br>　　　　Defendant. | Case No. 21-cv-00780-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION TO AMEND ANSWER**<br><br>Re: Dkt. Nos. 52, 54 |

This lawsuit arises out of defendant's termination of plaintiff from her position as patient care manager of the neonatal intensive care unit at Lucile Salter Packard Children's Hospital at Stanford ("LPCH"). Defendant LPCH has moved for partial summary judgment on plaintiff Bethan Faulkner's Claims One through Four. Dkt. No. 52. Defendant also moves to amend its answer to add an affirmative defense. Dkt. No. 54. The motions came on for hearing on November 18, 2022.

For the reasons set forth below, the Court grants the motion for partial summary judgment and grants the motion for leave to amend the answer.

**BACKGROUND**

**I.　Factual Background**

The crux of this dispute is whether defendant terminated plaintiff for whistleblowing and/or because she exercised her medical leave rights, as plaintiff contends, or whether for poor performance, as defendant contends.

In October 2011, plaintiff began working at LPCH as a neonatal clinical nurse specialist. Dkt. No. 53-2 ("Faulkner Decl.") ¶ 2. She then "worked as a clinical nurse specialist at the

Mother/Baby Unit and the High-Risk Antepartum Unit for LPCH Stanford" until she received a call in the fall of 2018 from Sheryl Goldstein, "an executive-level managing RN." *Id.* ¶¶ 2, 5. Goldstein asked plaintiff if she would like to take over as interim patient care manager of LPCH's neonatal intensive care unit ("NICU"). *Id.* ¶ 5. Plaintiff agreed to discuss what she "thought . . . was a great opportunity," *id.* ¶ 5, and at the end of November 2018 she met with Goldstein and two other LPCH Stanford executives. Dkt. No. 53 ("Opp'n") at 6. The three managers "wanted to confirm that [plaintiff] wanted to take the position. They said it was going to be difficult. They told [plaintiff] there was a lot of bullying going on in the NICU and that it was going to be a challenge, [and] that they would provide support." Faulkner Depo. Vol. I at 42:6-43:13.[1]

Plaintiff accepted the interim position and began that new role in December 2018. Faulkner Decl. ¶ 6. In that role, she supervised roughly 150 to 185 nurses. *Id.* Plaintiff states that when she came to the NICU she "immediately began reporting, and attempting to address issues in the department, including a chronic staffing shortage, a failure to provide break nurses, and problems with outdated/older facilities with electrical problems, pestilence in the form of ants and other pests, and other issues." *Id.* She filed written grievances through the internal complaint system known as "iCares." *Id.* ¶ 7. At some point, "after the management team agreed to hire and pay for an executive coach, at [plaintiff's] suggestion," plaintiff agreed to accept the permanent patient care manager position in the NICU. *Id.* ¶ 6.

In the meantime, tensions grew between plaintiff and others at LPCH. Plaintiff states that she personally experienced "bullying" from two physicians. *Id.* Dr. Lisa Bain and Dr. Alexis Davis served as medical directors of the NICU. *Id.* ¶ 7. They were often the subjects of complaints that plaintiff and other staff made, and plaintiff describes that "[e]ach time complaints were made, I was treated worse." *Id.* At an operations meeting in May 2020 plaintiff and Dr. Bain had a disagreement about the onboarding of a large number of new nurses. *See* Faulkner Depo. Vol. I at 145:11-146:22. In late June 2020, Dr. Bain responded on a group email thread to a message plaintiff had sent

---

[1] Various portions of the Faulkner deposition, Vol. I, are located at Dkt. No. 52-1, Ex. A, and at Dkt. No. 53-3, Ex. 1.

2

regarding the cost of an infant feeding treatment. Dkt. No. 52-1 ("Cabrera Decl."), Ex. H. Plaintiff forwarded the email to Goldstein and Andrew Palmquist, describing it as "a very accusatory email from Lisa . . . directly attacking my intentions to the whole group on the email!"[2] *Id.* at LPCH000448. Palmquist came to plaintiff's office the next day and told her that he understood what plaintiff was saying, that Dr. Bain's actions were "completely unprofessional," and that Palmquist "[would] take care of this." Dkt. No. 53-3, Ex. 2 ("Faulkner Depo. Vol. II") at 314:1-17.

In late July 2020, plaintiff took a vacation. Faulkner Depo. Vol. I at 170:15-18. Upon her return, she was called into a meeting that she thought was to discuss Dr. Bain's behavior. *Id.* at 170:15-171:1. Instead, nothing regarding Dr. Bain's behavior was discussed and the focus of the meeting was on areas where plaintiff needed to improve. *Id.* at 171:1-5. Goldstein informed plaintiff that plaintiff was being put on a performance improvement plan ("PIP"). *Id.* at 171:6-10. Plaintiff received the PIP on or around August 28, 2020. *Id.* at 229:11-230:3.

Plaintiff explains, "The fact that I was reporting and escalating patient safety issues and nothing was done caused extreme stress to me. The fact that I was being treated in a retaliatory manner caused extreme stress to me." Faulkner Decl. ¶ 8. Plaintiff "repeatedly told [her] managers, including Sheryl Goldstein, Andrew Palmquist, and HR Manager Joe Wilson, and I told [executive coach] Mona Sowiski, that I was experiencing extreme stress and anxiety." *Id.*

In October 2020, plaintiff "took three days of sick leave in a row for extreme stress, anxiety, and the physical toll the stress was taking on [her]." *Id.* ¶ 12. That same month, she also reached out to the LPCH Stanford Employee Assistance Program, which provides counseling for employees. *Id.* ¶ 14.

Plaintiff states that she "formally applied to LPCH Stanford on November 10, 2020 for a temporary leave of absence for three weeks." *Id.* On November 11, 2020, plaintiff was terminated. *Id.* Plaintiff declares that "[a]s Ms. Goldstein walked me to the front door of the building, she mentioned[,] 'You did not tell me you were going to apply for a leave of absence.'" *Id.*

---

[2] During this period, plaintiff reported to Goldstein, who reported to Palmquist (Associate Chief Nursing Officer), who reported to Hella Ewing (Interim Chief Nursing Officer). Opp'n at 8 (citing Dkt. No. 53-3, Ex. 6 ("Palmquist Depo.") at 19:10-17). In mid-September 2020, Luanne Smedley assumed Palmquist's role. *See* Dkt. No. 53-3, Ex. 29.

## II. Procedural Background

On February 1, 2021, plaintiff filed the present lawsuit against defendant. Dkt. Nos. 1, 2. On April 1, 2021, plaintiff filed the amended complaint, which is now the operative complaint. Dkt. No. 17 ("Am. Compl."). In it, plaintiff raises six claims for relief: (1) Interference with Family Medical Leave Act ("FMLA") Rights in Violation of 29 U.S.C. §§ 2601 et seq.; (2) FMLA Retaliation in Violation of 29 U.S.C. § 2615(a); (3) Discrimination – Disability – California Fair Employment and Housing Act ("FEHA"); (4) Retaliation – Disability – FEHA; (5) Wrongful Discharge in Violation of Public Policy; and (6) Violation of California Health and Safety Code § 1278.5 – Retaliation for Medical Whistleblowing. *Id.* at 1. On April 15, 2021, defendant filed an answer. Dkt. No. 19.

On October 10, 2022, defendant filed the present motion for partial summary judgment. Dkt. No. 52. On October 25, 2022, defendant filed a motion to amend its answer to add the affirmative defense of "Same Decision." Dkt. No. 54. Trial in this case is set to begin January 30, 2023. Dkt. No. 48.

## LEGAL STANDARDS

### I. Summary Judgment (Fed. R. Civ. P. 56)

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## II.     Amendment (Fed. R. Civ. P. 15)

Under Federal Rule of Civil Procedure 15, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) ("We have stated that this policy is to be applied with extreme liberality.") (internal quotation marks omitted). Rule 15 embodies a strong federal policy in favor of deciding cases on their merits. Factors weighed in determining whether leave should be granted include undue delay, bad faith, futility, and prejudice to the opposing party. *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir. 1999); *see also Hurn v. Retirement Fund Tr. of Plumbing, Heating & Piping Industry,* 648 F.2d 1252, 1254 (9th Cir. 1981) ("Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion.") (citation omitted).

**DISCUSSION**

**I.     The Court Grants the Motion for Summary Judgment on the FMLA Claims.**

Plaintiff brings claims two FMLA claims: for interference with her rights under the FMLA (Claim One) and for retaliation in violation of the FMLA (Claim Two).  Defendant moves for summary judgment on the FMLA claims because the evidence shows plaintiff requested FMLA leave *after* the hospital made the decision to terminate her.

"In order to establish an FMLA violation, the employee must demonstrate that the employer received sufficient notice of an employee's intent to take FMLA leave."  *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011) (citing *Sanders v. City of Newport,* 657 F.3d 772, 969-70 (9th Cir. 2011)); *see also Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (prima facie case of FMLA interference requires plaintiff to establish that she "provided sufficient notice of [her] intent to take leave").

Here, plaintiff's FMLA claims suffer a critical timing problem: defendant's decision to terminate plaintiff occurred several hours *before* plaintiff filed her FMLA claim, and plaintiff testified that she told no one at LPCH of her intent to file the leave claim before doing so.

The evidence before the Court shows the following timeline.  On August 28, 2020, plaintiff was placed on a 60-day performance improvement plan.  Faulkner Depo. Vol. I at 229:11-230:3.  On November 10, 2020, at 1:15 p.m., Joe Wilson (human resources manager) sent an email to Sheryl Goldstein (plaintiff's supervisor) and Luanne Smedley (Goldstein's supervisor) with regard to plaintiff's performance improvement plan, stating, in part: "Next steps after a PIP for an At-Will employee if they are still not meeting expectations would be termination or an extension of the PIP. . . . I have time tomorrow at 4 pm to discuss if that works for you.  If you have already decided on what is the best approach please let me know and I can provide the appropriate template and work with you on timing for issuing."  Dkt. No. 52-2 ("Goldstein Decl."), Ex. 4 at LPCH000173-74.  Five minutes later, at 1:20 p.m., Smedley replied to Wilson, stating, "We have decided on termination…….she has had plenty of time for improvement without success."  *Id.*  At 1:24 p.m. Wilson then forwarded the email to Employee Relations, stating, "Please open a case and I will handle."  *Id.*

Plaintiff testified at her deposition that she filed her claim for a three-week FMLA leave by calling The Hartford, LPCH's third party leave administrator, at approximately 4:00 p.m. on November 10, 2020. Falkner Depo. Vol. I at 73:9-12, 74:11-75:1. Plaintiff received an email from The Hartford at 4:57 p.m. that same day, stating, "Thanks for submitting your recent claim." *Id.* at 73:16-25. Plaintiff testified at her deposition that she did not tell anyone at LPCH—including anyone in her chain of command or any of her subordinates—that she would be requesting a medical leave of absence prior to her phone call to The Hartford at approximately 4:00 p.m. on November 10. *Id.* at 77:8-19.

In her opposition brief, plaintiff has not come forward with any evidence to show that anyone at LPCH knew of plaintiff's FMLA request *before* her supervisors made the decision to terminate her at 1:20 p.m. on November 10. Plaintiff notes that Luanne Smedley testified that she knew about plaintiff's leave request on November 10, and that on November 10 Smedley and Ewing[3] texted about plaintiff's leave of absence. Opp'n at 14-15. But a review of the text messages shows they are stamped November 10, 2020, at 5:15 p.m. They therefore do not support plaintiff's implication that Smedley knew of the leave request *before* deciding to terminate plaintiff earlier that day. Dkt. No. 53-3 ("Thigpen Decl."), Ex. 39 at LPCH 001818. Smedley testified that she "was made aware of" plaintiff's request for medical leave on November 10 but that she could not recall how she found out, and plaintiff presents no evidence showing that Smedley or anyone else knew of the leave request before 1:20p.m., when Smedley communicated the termination decision to human resources. *See* Thigpen Decl., Ex. 8 ("Smedley Depo.") at 114:7-17; Goldstein Decl. Ex. 4 at LPCH00173.

The remainder of plaintiff's opposition brief builds a timeline of plaintiff's escalating stress over the course of months at her job, chronicling who at LPCH was aware of this stress. But escalating stress does not by itself create a right protected under the FMLA. Whether anyone at LPCH knew that plaintiff was suffering from stress and anxiety is a different matter from whether anyone at LPCH knew that she intended to take a medical leave. Although an employee seeking FMLA leave for the first time need not specifically invoke the FMLA in order to trigger rights under

---

[3] *See* n.2, *supra*.

7

the Act, federal regulations do require that "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302. At her deposition, plaintiff testified that she told no one at LPCH of her intent to take a medical leave before she put in the request to the Hartford. Falkner Depo. Vol. I at 77:8-19. The undisputed facts show that plaintiff did not request medical leave until several hours after her supervisors decided to move forward with termination.[4]

Plaintiff's amended complaint asserts several other theories for FMLA interference and retaliation. She alleges that defendant interfered with and denied her "right to a medically necessary reduced work schedule" and that defendant "retaliated and discriminated against Plaintiff because she took FMLA leave and opposed LPCH Stanford's practices of denying leave to employees." Am. Compl. ¶¶ 58, 64. However, plaintiff does not discuss or present any evidence supporting these allegations in her opposition brief. The Court thus infers that plaintiff has abandoned those theories.

In sum, defendant has put forth evidence showing the absence of a dispute of material fact regarding notice to the employer. The undisputed evidence shows that plaintiff's supervisors decided to terminate plaintiff several hours before she applied for medical leave. In response, plaintiff has failed to designate specific facts showing there is a genuine issue for trial.

Accordingly, the Court GRANTS defendant's motion for partial summary judgment on the FMLA claims (Claims One and Two).

## II. The Court Grants the Motion for Summary Judgment on the FEHA Claims.

Defendant also moves for summary judgment on plaintiff's claims under the California FEHA, arguing that plaintiff does not have a FEHA-protected disability.

Plaintiff has brought two disability-related claims under FEHA: for discrimination in

---

[4] To the extent plaintiff argues that her three-day leave in the first half of October 2020 was protected FMLA leave, this is contradicted by her own declaration that (1) describes the October 2020 leave as "sick leave," and (2) explains that *in November 2020*, "[o]n the recommendation of my medical providers, I decided to take a leave of absence for stress – something I had never done at any prior position in my entire life . . . ." Faulkner Decl. ¶¶ 12-14.

8

violation of FEHA, California Government Code section 12940(j) (Claim Three); and retaliation in violation of FEHA, California Government Code section 12940(h) (Claim Four).

Plaintiff's FEHA claims hinge on the theory that defendant terminated her immediately afterwards and because of her request for medical leave. *See* Am. Compl. ¶ 73 ("Defendants have discriminated against Ms. Faulkner based on her known physical disability by targeting her for termination and terminating her employment after she availed herself of requesting a temporary medical leave for three weeks due to her disability."), ¶ 74 ("Defendants' discriminatory animus is evidenced by the fact that Ms. Faulkner had never taken medical leave before, but when she did so, Defendant terminated her *the day after her request.*"), ¶ 85 ("Defendants terminated Plaintiff the day after she requested temporary medical leave, directly in retaliation for complaining about her disability and for requesting temporary medical leave for treatment for her disability."). Thus, as discussed with regard to the FMLA claims above, the FEHA claims also fail because plaintiff has not come forward with evidence to show the termination decision was made *after* plaintiff requested medical leave.

Additionally, the Court agrees with defendant that the FEHA claims fail because the evidence presented here does not show that plaintiff suffers from a disability that is protected under FEHA.[5] The parties debate whether plaintiff adequately pleaded a FEHA-protected disability in her amended complaint. The Court need not resolve this issue in ruling on the present motion for summary judgment, because the undisputed evidence—and the position that plaintiff takes in her papers—shows that she is not disabled under FEHA as a matter of law.

Plaintiff takes the position that she "was terminated for stress and anxiety she experienced throughout 2019 and 2020," and that she "suffered work-related stress and physical symptoms from the stress of fielding several conditions in the workplace," *see* Opp'n at 19, 21. However, she does not respond to defendant's argument that not all stress and anxiety rise to the level of a recognized

---

[5] "A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability." *Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 458-59 (2020) (citation omitted).

disability under FEHA. Nor does she address the numerous decisions holding that "[a]n employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA." *See, e.g., Higgins-Williams v. Sutter Med. Fdn.*, 237 Cal. App. 4th 78, 84 (2015) (citing *Hobson v. Raychem Corp.*, 73 Cal. App. 4th 614, 628 (1999), *overruled on other grounds by Colmenares v. Braemer Country Club, Inc.,* 29 Cal. 4th 1019, 1031 (2003); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 522, 524-25 (7th Cir. 1996)); *Alsup v. U.S. Bancorp*, No. 14-cv-01515-KJM-DAD, 2015 WL 224748, at *3-6 (E.D. Cal. Jan. 15, 2015) (dismissing FEHA disability discrimination claim where "plaintiff's alleged disability only precludes her from working for a particular supervisor").

Plaintiff writes these cases off as inapposite because Dr. Bain and Dr. Davis were not her "supervisors." *See* Opp'n at 20-21. However, the reasoning behind the courts' decisions is analogous to the scenario presented here. Moreover, the undisputed facts show that Dr. Bain was involved in regular meetings regarding plaintiff's performance and that Dr. Bain and Dr. Davis both provided input into plaintiff's performance evaluation. *See* Faulkner Decl. ¶ 10 (plaintiff was told in July 2020 "to change [her] behavior and communication patterns" and that she "would have to start meeting with Dr. Bain weekly"); Faulkner Depo. Vol. I at 147:12-22; Thigpen Decl., Ex. 38 at LPCH 000739 (incorporating Dr. Bain and Dr. Davis's feedback into performance improvement plan); Goldstein Decl. ¶ 2. Whether Dr. Bain and Dr. Davis were technically plaintiff's supervisors misses the point. The history of stress, anxiety, and related symptoms that plaintiff chronicles all stem from what she herself describes as "work-related stress." *See* Opp'n at 21; Faulkner Decl. ¶ 8. Work-related stress is not a cognizable disability under FEHA. *See Striplin v. Shamrock Foods Co.*, 731 F. App'x 618, 620 (9th Cir. 2018) (affirming summary judgment on FEHA discrimination claims "because workplace stress related to the employee's job performance is not a cognizable disability under FEHA," citing *Higgins-Williams*). Plaintiff has not made a prima facie showing that she was disabled under FEHA.

The Court therefore GRANTS defendant's motion for summary judgment on the claims of disability discrimination and disability retaliation under FEHA (Claims Three and Four).

The parties spend significant portions of their briefs debating whether attorneys' fees are recoverable under California Health and Safety Code section 1278.5, which is now one of the two remaining claims in this case. Of course, plaintiff will only be able to obtain remedies under this statute once she has prevailed on this claim at trial. The Court declines to issue an advisory ruling about the availability of attorneys' fees under this California state law at this juncture.[6]

### III. The Court Grants the Motion to Amend the Answer.

After filing the motion for partial summary judgment, LPCH separately moved to amend its answer to add the affirmative defense of "Same Decision."[7] Dkt. No. 54 ("Mot. to Amend"). LPCH seeks to add the following:

> **THIRTEENTH AFFIRMATIVE DEFENSE**
>
> **(Same Decision)**
>
> Plaintiff's Complaint, and each cause of action set forth therein, are barred because legitimate nondiscriminatory reasons for its decision to terminate Plaintiff's employment were the motivating factor in its decision. Should a finder of fact determine that Defendant's decision to terminate Plaintiff's employment was motivated by both discriminatory and nondiscriminatory reasons, the nondiscriminatory reasons alone would have induced Defendant to make the same decision. As supported by critical feedback set forth in Plaintiff's 2020 performance evaluation, subsequent Performance Improvement Plan, and termination letter, Defendant had legitimate performance-based reasons for terminating Plaintiff's employment.

Dkt. No. 54-1 ("Wintterle Decl."), Ex. 1 at 27.[8]

A review of the emails between counsel shows that on September 26, 2022, following a third failed mediation attempt, defense counsel contacted counsel for plaintiff to request a stipulation to the filing of the amended answer. *See id.* at 9-10. After plaintiff refused, this motion followed.

---

[6] The Court likewise will not reach plaintiff's request for judicial notice of the legislative histories of two California bills that she cites in support of her position on attorneys' fees. *See* Dkt. No. 53-1.

[7] This motion was originally set for hearing on December 2, 2022, but the Court advanced the hearing date in order to hear argument on the motion at the same time as the motion for partial summary judgment. *See* Dkt. No. 62.

[8] References to page numbers in the exhibits to the Wintterle declaration are to the ECF-stamped page numbers at the top right-hand corner of the page.

11

Defendant seeks to add this affirmative defense for use at trial and does not seek to change any of the pretrial dates or the trial date. Defendant argues that amendment is necessary in order to have all defenses available to it at trial and that no new discovery will be needed because this defense "is based upon the same allegations and facts as LPCH's other affirmative defenses[.]" Mot. to Amend at 3.

The Court will GRANT the motion to amend the answer. In the Ninth Circuit, "[i]n the absence of a showing of prejudice . . . an affirmative defense may be raised for the first time at summary judgment." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (quoting *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993)). LPCH did not move on this defense at the summary judgment stage; instead, prior to moving for summary judgment, LPCH provided notice to plaintiff of its intent to use this defense at trial. If a defendant may raise an affirmative defense for the first time on summary judgment, the Court sees no reason to deny LPCH's request to add this affirmative defense under the facts presented here.

None of the factors that courts consider on a Rule 15 motion to amend warrant denial here. In her opposition brief, plaintiff has failed to "point to a 'tangible way in which [she] was prejudiced by the delay.'" *See id.* at 1009 (citing *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997)). The proposed amendment simply adds a legal theory to the case for defendant's use at trial; it does not add a new factual theory. The Court finds no evidence of bad faith, nor has plaintiff pointed to any. Although LPCH could have moved more swiftly to amend its answer, the Court does not find that LPCH has unreasonably delayed in seeking leave to amend; regardless, "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend." *See Owens*, 244 F.3d at 712-13 (citation omitted). And amendment would not be futile; in its reply brief, defendant clarifies that it intends to use this affirmative defense even if the FEHA and FMLA claims are removed from the case. *See* Dkt. No. 63 at 7.

Plaintiff asks that, if the Court grants the motion to amend, the Court order relevant discovery. Dkt. No. 61 at 11-12. The Court finds this to be a reasonable request, given that non-expert discovery has closed and the parties' pretrial papers are due in approximately one month. *See* Dkt. No. 48. Specifically, the Court will grant plaintiff's request for permission to depose one

witness pursuant to Federal Rule of Civil Procedure 30(b)(6), to be taken at defendant's expense, on less than 30 days' notice, on topics related to the "same decision" defense, with documents to be provided. Plaintiff is no way obliged to do so.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment on Claims One through Four. The Court GRANTS defendant's motion to amend the answer to add the affirmative defense of Same Decision. Defendant shall file its amended answer on the docket **no later than December 2, 2022.**

Plaintiff may conduct discovery related to the additional affirmative defense, as described in this Order, *supra*.

**IT IS SO ORDERED**.

Dated: November 28, 2022

_____
SUSAN ILLSTON
United States District Judge

13