UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETHAN FAULKNER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LUCILE PACKARD SALTER CHILDREN'S HOSPITAL,<br><br>　　　　Defendant. | Case No. 21-cv-00780-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE NO. 1; GRANTING DEFENDANT'S MOTION IN LIMINE NO. 5**<br><br>Re: Dkt. Nos. 69, 73 |

On December 20, 2022, as part of the pretrial filings, defendant Lucile Packard Salter Children's Hospital ("LPCH") filed seven motions in limine. The Court heard argument at the pretrial conference on January 17, 2023. The Court reserved ruling on defendant's Motions in Limine No. 1 and No. 5, pending the filing of a declaration from defense counsel regarding policies that plaintiff says should have been produced but were not, and pending the filing of the parties' revised witness list. On January 20, 2023, the parties filed the revised witness list and defense counsel filed the requested declaration. Dkt. Nos. 98, 99. Defendant's Motions in Limine No. 1 and No. 5 are therefore ripe for review. Trial is set to begin February 1, 2023.

After consideration of the arguments made in the briefs and at the pretrial conference, and based on the subsequent filings at Dkt. Nos. 98 and 99, the Court rules on the remaining motions in limine as follows.

**Defendant's Motion No. 1 (to exclude undisclosed witnesses and documents), Dkt. No. 69**:

**GRANTED**, as to Rick Majzun; **DENIED** as to the balance of the motion. If plaintiff wished to call Majzun, the Chief Operating Officer of the hospital, she should have disclosed

1    Majzun as a witness in her initial or supplemental disclosures. As to the remaining three witnesses

2    defendant says were not previously identified by either party and who remain on plaintiff's witness

3    list (Christy Sandborg, MD; David Stevenson, MD; and Sarah Wallace), the Court finds they are

4    sufficiently close to the events of this case that defendant was on notice that they might be potential

5    witnesses.

6        Nor will the Court exclude the two financial witnesses and the four financial exhibits

7    (Plaintiff's Exhibits 150-153). These witnesses and exhibits will only come into the case if trial

8    moves into the punitive damages phase. The four documents plaintiff would introduce are publicly

9    available LPCH financial documents, and the witnesses are ones employed by LPCH to verify those

10   documents. At the pretrial conference, defendant objected that the specific financial witness

11   plaintiff identified (Dana Hearing) may not be the correct person, and defendant offered to produce

12   their "person most knowledgeable." **<u>Prior to the commencement of trial, the parties shall meet</u>**

13   **<u>and confer on who the appropriate witness should be.</u>**

14

15   **<u>Defendant's Motion No. 5 (to exclude James W. Potts, JD), Dkt. No. 73</u>:**

16       **GRANTED.** Defendant seeks to exclude plaintiff's Human Resources expert, James Potts.

17   Defendant argues that Mr. Potts's expert report does not contain any opinions, that his testimony

18   will not help the trier of fact and is not based on sufficient facts or data, and that his testimony will

19   cause confusion and waste time. Dkt. No. 73 at 2.

20       Plaintiff counters that Mr. Potts was hampered by defendant's withholding of numerous HR

21   policies that were responsive to plaintiff's discovery requests. Plaintiff indicates that she seeks

22   compensation for the "enormous sum Plaintiff has expended for Mr. Potts to render supplemental

23   opinions as a result of Defendant's belated amendment, all for the opinions to need to be

24   supplemented again based on the recent discovery of relevant policies – which Mr. Potts testified

25   that he needed to review." Dkt. No. 91 at 11. Plaintiff has also offered to make Mr. Potts available

26   for a supplemental deposition.

27       At the pretrial conference, the Court ordered defense counsel to "file a declaration explaining

28   which HR policies were requested by plaintiff, which policies were produced and why the other

policies referred to by plaintiff's counsel were not produced previously." Dkt. No. 97 at 5. Defense counsel has now done so. Dkt. No. 98. Having reviewed the declaration and attached exhibits, and considering the briefs and arguments presented on this motion in limine, the Court concludes that—although defendant should have produced two additional policies in response to plaintiff's requests for production[1]—nevertheless, defendant's motion to exclude Mr. Potts should be **GRANTED**.

**Background**

The relevant timeline is as follows. On October 26, 2022, two days before the expert reports were due, the parties filed a request for an extension of the expert deadlines. *See* Dkt. Nos. 48, 55. The Court granted the parties an extension, though it did not grant as lengthy an extension as the parties had requested, since the dates they requested would have put the expert discovery cutoff one month after pretrial paperwork was due and several days *after* the scheduled pretrial conference. *See* Dkt. Nos. 55, 58. Instead, the Court ordered that the parties do an initial disclosure of expert witnesses on October 28, 2022 (the original deadline for the expert reports); that the parties exchange initial expert reports on November 23, 2022; and that the rebuttal expert disclosure take place on December 6, 2022. Dkt. No. 58. The close of expert discovery was extended to December 20, 2022. *See id.*

It is not apparent from the briefing whether plaintiff identified Mr. Potts on October 28, 2022, as required.

On November 23, 2022, plaintiff served her expert witness disclosure and named James Potts as a retained expert to offer testimony on human resources obligations and management practices, including "[t]he adequacy of Defendant's policies for investigating and remediating complaints and whether Defendant complied with or deviated from their own policies for reporting, investigating, and remediating complaints made by Plaintiff and others, and against Plaintiff; and

---

[1] These are: (1) the LPCH 2011 Code of Conduct and (2) Code of Professional Behavior of Medical Staff and Physicians-in-Training Policy. Dkt. No. 98 (Cabrera Decl.) ¶ 5. Defendant explains that the remainder of the documents plaintiff identified as having been wrongfully withheld are policies of Stanford Health Care, which is a separate entity from LPCH and not a party to this case. *See id.* ¶ 3.

. . . [t]he inadequacy of any investigations by Defendant into Plaintiff's complaints of discrimination." Dkt. No. 73 at 3; Dkt. No. 73-1 at 7-8. Also on November 23, 2022, plaintiff produced Mr. Potts's expert opinion report.

On November 28, 2022, the Court issued its summary judgment ruling, dismissing plaintiff's Family Medical Leave Act ("FMLA") and California Fair Employment and Housing Act ("FEHA") claims from the case. Dkt. No. 65. In the order, the Court also allowed defendant to amend its answer to add the defense of "same decision." The Court granted plaintiff's request to conduct a deposition under Rule 30(b)(6) "on topics related to the 'same decision' defense, with documents to be provided." *Id.* at 13.

On December 19, 2022, defendant took Mr. Potts's deposition. According to defendant, at the deposition Mr. Potts confirmed that the opinions that plaintiff's expert disclosure said he would provide were not contained in his report and that his report did not discuss anything that defendant specifically did or did not do in this case. Dkt. No. 73-1 (Cabrera Decl.) at 2 ¶ 4. He testified that he had a short timeframe in which to prepare the report, that he did not have complete information, and that he wanted to review items such as LPCH's handbook and personnel policies. *Id.* ¶ 5.

On December 21, 2022, plaintiff took the Rule 30(b)(6) deposition of Sheryl Goldstein, as related to the additional defense of "same decision." At the deposition, Ms. Goldstein mentioned an LPCH "code of conduct," which was not a document that defendant had produced in the case. Following the deposition, plaintiff's counsel conducted a web search and discovered that defendant did not disclose multiple policies that she says are directly relevant to Mr. Potts's testimony. *See* Dkt. No. 91-1 (Thigpen Decl.) ¶¶ 6-8. These include policies that defendant disclosed in another lawsuit as well as policies publicly listed on its website, and they cover such topics as "Code of Conduct" and "Code of Professional Behavior of Medical Staff." *See id.*

At the pretrial conference, defense counsel stated that the policies were not responsive to the discovery requests in this case, and that many of the policies plaintiff points to are not LPCH policies but rather are policies for Stanford University, a separate entity that is not a party to this lawsuit. The Court thereafter instructed defense counsel to file a declaration regarding the policies that plaintiff says were not produced. The Court agreed to defer ruling on defendant's Motion in Limine

4

No. 5 until after receipt of the declaration.

## Legal Standard

"Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)); *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir. 2011) ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."). "[E]xpert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne,* 555 F.3d 742, 756 (9th Cir. 2009) (citation omitted). Whether to admit or exclude expert testimony lies within the trial court's discretion. *GE v. Joiner*, 522 U.S. 136, 141-42 508 (1997); *United States v. Calderon-Segura*, 512 F.3d 1104, 1109 (9th Cir. 2008).

## Analysis

Looking to the initial expert report that Mr. Potts filed on November 23, 2022, the Court agrees with defendant that it is unclear what opinions Mr. Potts would be rendering, and it is unclear how his testimony would help the trier of fact. The initial report that Mr. Potts submitted consists of an "Introduction, a "Background" section, a summary of various employment laws, and a "Conclusion." In the introduction, Mr. Potts specifically states, "This report is not intended to render an opinion on the specific actions or inactions of the defendant. Furthermore, it should be noted that it is my understanding there will be additional discovery therefore this report may need to be supplemented." Dkt. No. 73-1 at 11. The "Background" section is filled with improper advocacy.[2]

---

[2] The "Background" section of the report, for instance, asserts that plaintiff's performance was "excellent," that understaffing of the NICU "dramatically impacted patient safety," and that plaintiff was "surprisingly" placed on a 60-day performance action plan. Dkt. No. 73-1 at 11. (Because of numerous exhibits within exhibits in the motions in limine, the Court cites to the

The body of the report is a summary of various California and federal laws and "General Standards and Best Practices for Human Resources," with no mention of the conduct, policies, or practices of the defendant in this case. Finally, the report reaches the following "Conclusion":

> In my opinion, human resources professionals, in general, have an affirmative obligation to investigate and take prompt remedial action when complaints of harassment are raised. Employers' risk liability if allegations are made, nothing is done, and further harm results. Liability, in many instances, can be avoided if the employer demonstrates that it accomplished an immediate and complete investigation followed by immediate and appropriate corrective action.
>
> With respect to health and safety Laws in the workplace, both federal and state law, impose an affirmative duty on employers to investigate potential safety and health issues.
>
> In reference to both points above, human resources professionals should address any retaliatory actions against an employee that has filed a formal or informal complaint.

*Id.* at 15.

Because the report fails to draw any connection between human resources policies/practices and defendant's conduct <u>in this case</u>, Mr. Potts's expert opinion is of no use to the jury. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (explaining that human resources expert's "opinions in court were not tied to specific portions of the policy manual, and appeared to be general observations regarding what is normal or usual business practice.[] As such, his testimony did not meet the requisite level of reliability.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)); *see also Wood v. Montana Dep't of Revenue*, No. CV 10-13-H-DWM, 2011 WL 4348301, at *2-3 (D. Mont. Sept. 16, 2011) (allowing human resources expert to testify as to whether the defendant deviated from relevant human resources policies and practices, but barring expert from offering opinions that are within the common knowledge of the jury).[3]

Nor is the Court persuaded by plaintiff's argument that Mr. Potts should be permitted to testify because defendant withheld relevant policies in discovery. The Court agrees with plaintiff

---

exhibits using the ECF-stamped page numbers at the top righthand corner of the page.)

[3] In *Naeem*, the Seventh Circuit ruled that admission of this testimony at trial was error, but ultimately found that the error was harmless because the challenged testimony was either corroborated by other witnesses, was elicited by the defendants themselves on cross-examination, or was otherwise discredited on cross-examination. 444 F.3d at 609.

that the 2011 LPCH Code of Conduct and Code of Professional Behavior of Medical Staff and Physicians-in-Training Policy should have been produced.[4] Nevertheless, the Court finds that the failure to produce these two policies was harmless under the specific facts of this case and particularly in light of the inadequacy of Mr. Potts's initial report. In preparing his initial report, Mr. Potts did not review even the policies that defendant *had* produced up until that point. *See* Dkt. No. 73-1 at 2 ¶ 5 (defense counsel declaration that Mr. Potts testified that he did not have complete information and that he wanted to review LPCH's Handbook and personnel policies), 17 (invoice showing which documents Mr. Potts reviewed). Moreover, the only remaining claims in this case relate to medical whistleblowing, and Mr. Potts' report was extremely generic on that point.[5] Rather, it appears his testimony was intended to cover the FEHA and FMLA claims that were dismissed on summary judgment. It is unclear from the report, and plaintiff has not explained, what Mr. Potts could have to say about medical whistleblowing that is beyond the common knowledge of the jury.

It appears from the filings that plaintiff misapprehended that "discovery was still open" and that Mr. Potts would be able to correct his report through supplementation.[6] The non-expert

---

[4] In her Request for Production No. 4, plaintiff requested "Any and all written personnel policies or procedures in the NICU during the period in which Plaintiff was employed by YOU." Dkt. No. 91 at 8.

[5] This section of Mr. Potts's report states, in full:

> **Medical Whistleblower State & Federal Guidelines** Several federal and state laws prohibit employers from retaliating against employees who report practices by employers that threaten public health and safety, or violate the law. Other laws prohibit retaliation against employees who file complaints about their own working conditions, including unsafe working conditions. Although the laws vary from state to state, anti-retaliation laws generally prohibit adverse actions such as termination, layoff, demotion, suspension, denial of benefits, reduction in pay, and discipline, when the adverse action is taken in retaliation for employees' report of unsafe or unlawful practices. Dkt. No. 73-1 at 14.

[6] The following exchange took place between counsel at Mr. Potts's deposition on December 19, 2022:

> Ms. Alioto: Now, just so we're clear, discovery is still open. So I'm a little unclear on the emphasis here, but for the record, discovery is still open.

1  discovery cut-off was September 9, 2022.  Dkt. No. 48.  The Court allowed plaintiff to take one
2  additional Rule 30(b)(6) deposition "on topics related to the 'same decision' defense" that it allowed
3  defendant to add.  Dkt. No. 65 at 13.  Nothing about the addition of that defense, or the limited
4  discovery related to it, should have made plaintiff believe she would be able to supplement an initial
5  expert report that itself did not comply with Federal Rule of Civil Procedure 26(a)(2)(B).

6      Mr. Potts's initial report was simply inadequate.  It failed to draw any connections between
7  HR policies and defendant's own policies or conduct here (even on the FEHA and FMLA claims
8  that were then live in the case).  The fact that plaintiff did not provide Mr. Potts with even the LPCH
9  policies that had been produced up to that point belies plaintiff's argument that the production of
10 two additional LPCH policies would have altered the report.  Plaintiff has shown no reason why the
11 Court should allow supplementation of the report at this late stage, with the case set for trial next
12 week.

13     Defendant's Motion in Limine No. 5, to exclude James W. Potts, JD, is **GRANTED**.

15 **IT IS SO ORDERED**.

16 Dated: January 24, 2023

_____
SUSAN ILLSTON
United States District Judge

---

Mr. Bruno: And I think – I think your expert disclosure in the report need [sic] to contain all the opinions that you're going to deliver at trial and they didn't.  So I'm not going into the opinions.

Ms. Alioto: Okay.  We won't discuss it now, but discovery is still open, and he has every intention of doing a supplemental report, as is allowed by the federal rules.

Dkt. No. 98-1 (Potts Depo.) at 43.

8